# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JESSICA CILIONE**, | Case No. 3:18-cv-02030-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **TECHFIVE, LLC**, | |
| Defendant. | |

Michael O. Stevens, STEVENS & LEGAL, 1915 NE Stucki Avenue, Suite 308, Hillsboro, OR 97006; Katherine Goodman, STEVENS & LEGAL, 3699 NE John Olsen Avenue, Hillsboro, OR 97124. Attorneys for Plaintiff.

Mark A. Crabtree and Anthony Copple, JACKSON LEWIS PC, 200 SW Market Street Suite 540, Portland, OR 97201. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Plaintiff Jessica Cilione brings this lawsuit against her former employer, Defendant Techfive, LLC ("Techfive"). Plaintiff Cilione alleges that Techfive: (1) discriminated against her on the basis of gender, in violation of Or. Rev. Stat. § 659A.030; (2) retaliated against her for using protected medical leave, in violation of Or. Rev. Stat. § 659A.183; (3) retaliated against her for whistleblowing, in violation of Or. Rev. Stat. § 659A.199. ECF 4 at 4–7. Plaintiff also brought a claim for common law wrongful discharge, but United States District Court Judge

Michael Simon previously dismissed that claim finding that it was precluded by the statutory claims. ECF 22. Presently before this Court is Defendant Techfive's motion for summary judgment on all of Plaintiff Cilione's claims. ECF 41.

This Court held a hearing on Defendant's motion on April 3, 2020. After considering all of the pleadings, the record, and the arguments of counsel, this Court finds that Defendant Techfive is entitled to summary judgment on each of Plaintiff Cilione's claims. For the reasons that follow, Defendant Techfive's motion is granted.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co, Ltd.. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

If the moving party meets its initial burden, the non-moving party must produce admissible evidence that shows there is a genuine issue of material fact for trial. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). But "the mere existence of *some* alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original). An assertion that a fact is subject to genuine dispute must be supported by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed R. Civ. P. 56(c)(1)(A). When an affidavit or declaration is relied upon to oppose a summary judgment motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed R. Civ. P. 56(c)(4). Summary judgment is warranted "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. In such a case, there can be no dispute of material fact because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23.

## BACKGROUND

Defendant Techfive operates a call center that contracts with consumer electronic companies to sell protection plans and provide customer support. Gueltzow Decl., ECF 43 at ¶ 2. Plaintiff Cilione formerly worked for Techfive as a customer service supervisor. In that role, Plaintiff was responsible for monitoring, training, and disciplining a group of up to fifteen customer service agents. *Id*. The call center employed multiple customer service supervisors in positions similar to Plaintiff's. *Id*.

Techfive requires its agents to provide certain disclosures to customers before upgrading a customer's protection plan coverage. Copple Decl., Ex. A, ECF 44-1 at 14. In January 2017, Plaintiff Cilione discovered that an agent on another supervisor's team added protection plans to

customer accounts without adequately providing disclosures or obtaining consent. *Id.* at 19–23. Plaintiff reported the conduct to her supervisor, Jon Sergi, on January 12, 2017. *Id.* at 27; Stevens Decl., Ex. 3, ECF 46-3, ¶ 5. Mr. Sergi reviewed the reported information and, on February 9, 2017, instructed the offending agent's supervisor to issue an oral warning to the employee. Sergi Decl., ECF 42 at ¶ 2. That agent received a warning on March 7, 2017. *Id.*

In January 2017, Plaintiff Cilione was considered for a special project—the customer solution team ("CST"). Cilione Decl., ECF 47 at ¶ 5. There were no additional wages or monetary benefit to being assigned to the CST, but assignment to special projects could possibly improve an employee's prospects for future promotions. Copple Decl., Ex. A, ECF 44-1 at 46. Although Plaintiff was a qualified senior team member, the position was given to a male coworker with less experience. Cilione Decl., ECF 47 at ¶ 6. All the employees assigned to the CST were male. *Id.* at ¶ 7. Plaintiff believes that she was passed over for the special assignment because of her gender. Copple Decl., Ex. A, ECF 44-1 at 46. Plaintiff was selected by Mr. Sergi for a different project assignment, however. *Id.* at 45.

Plaintiff also claims that Mr. Sergi helped her male peers more than he assisted her. *Id.* at 46–47.  Plaintiff testified that Mr. Sergi responded more quickly to her peers, answered questions, and helped the other supervisors when they had to have difficult discussions with their subordinates. *Id.* at 47. Plaintiff claims she was not afforded this assistance. *Id.*

On July 6, 2017, Plaintiff Cilione emailed Mr. Sergi and requested that her schedule be changed. Sergi Decl., ECF 42 at ¶ 4. Plaintiff Cilione requested a flex schedule so that her shifts would be better aligned with the schedule of the agents on her team. Copple Decl., 44-1 at 10–11. Mr. Sergi provided Plaintiff's proposal to the scheduling coordinator, Lori Munk. Sergi Decl., ECF 42 at ¶ 4. Around the same time, Plaintiff experienced a serious health condition as a

result of her work-related stress. Cilione Decl., ECF 47 at ¶ 9. She requested intermittent leave

under the Oregon Family Leave Act ("OFLA"). Stevens Decl., Ex. 3, ECF 46-3, ¶ 9. On July 7,

2017, Plaintiff began a period of intermittent leave that lasted until around September 20, 2017 at

which time she began continuous leave. Copple Decl., Ex. A, ECF 44-1 at 40. Plaintiff's counsel

conceded at the hearing that Techfive neither granted nor denied her request for a schedule

change before she began intermittent leave the very next day.

On July 21, 2017, while still on intermittent leave, Plaintiff Cilione spoke with Marilyn

Gueltzow, a human resource representative, to inform Ms. Gueltzow of her medical condition.

Stevens Decl., Ex. 3, 46-3, ¶ 10. Ms. Gueltzow allegedly told Plaintiff during this conversation

that she should quit her job. *Id.* After this conversation, Plaintiff claims that Mr. Sergi also told

her she should quit. *Id.* A few days later, on July 26, 2017, Ms. Gueltzow sent an email to all of

the customer service supervisors which included a spreadsheet listing the names of eleven

employees, including Plaintiff, who were taking OFLA leave. *Id.* at ¶ 11; Copple Decl., Ex. A,

ECF 44-1 at 38. The spreadsheet noted that several employees, including Plaintiff, were taking

leave for the "[e]mployee's own health condition" but provided no further details about the

reason for leave. *Id.* The purpose of distributing the list of employees  on leave to supervisors

was to allow supervisors to manage work schedules. Gueltzow Decl., ECF 43 at ¶ 8.

On August 6, 2017, Plaintiff emailed Mr. Sergi and reported that several female agents

had complained about the conduct of Brandon Keffer, another supervisor and peer of Plaintiff.

Copple Decl., Ex. A, ECF 44-1 at 27, 30; Cilione Decl., ECF 47 at ¶ 8. At that time, Plaintiff did

not identify the female agents but stated that the agents felt belittled by Mr. Keffer's sexist

conduct. Copple Decl., Ex. A, ECF 44-1 at 30. Three days later, on August 9, 2017, Mr. Sergi

requested that Plaintiff direct the agents to speak to him or Ms. Gueltzow to discuss the alleged

harassment "so we can address this."*Id.* On September 2, 2017, Plaintiff emailed Mr. Sergi and reported that female agents continued to speak to her about Mr. Keffer's conduct even though she informed the agents they should report to Mr. Sergi or Ms. Gueltzow. *Id.* at 29. On September 5, 2017, Mr. Sergi responded: "Please advise them to see [Ms. Gueltzow] or myself[.] If they don't want to come to [Ms. Guetzlow] or I they can see any member of management. We would need specifics to make any changes, what we do not know we cannot correct." *Id.* Ms. Gueltzow then scheduled a meeting with Plaintiff Cilione to discuss her reported concerns on September 11, 2017, which was rescheduled for September 14 at the request of Plaintiff. Gueltzow Decl., ECF 43 at ¶ 3. At that meeting, Plaintiff identified three employees who allegedly complained that Mr. Keffer spoke in a harsh or rude tone. *Id.* Ms. Gueltzow interviewed the employees, but none of the employees expressed concern with Mr. Keffer's actions. *Id.* Consequently, Ms. Gueltzow closed her investigation about the matter. *Id.* Plaintiff Cilione left work for continuous leave before Ms. Gueltzow completed her interviews or closed the investigation. *Id.*

Plaintiff Cilione also reported to Ms. Gueltzow that Mr. Sergi was yelling at and humiliating female workers. Cilione Decl., ECF 47 at ¶ 8. Plaintiff Cilione claims that Mr. Sergi yelled at her two times while she worked at Techfive. Copple Decl., Ex. A, ECF 44-1 at 31. The first incident allegedly occurred when Plaintiff requested Mr. Sergi's assistance to talk to one of the agents. *Id.* Plaintiff Cilione concedes that Mr. Sergi did not scream, but spoke in a "raised voice" with a "sterner, louder, frustrated tone of voice." *Id.* at 31–32. Plaintiff Cilione testified that Mr. Sergi told her that she had "been a manager for a long time" and needed to do it by herself. *Id.* at 31. The second incident allegedly occurred in July or August of 2017. *Id.* at 33. Plaintiff claims that Mr. Sergi yelled at her to leave his office because he did not have time to

speak with her about one female agent who had allegedly been mistreated by Mr. Keffer. *Id.* at 26, 33.

Around August 24, 2017, Plaintiff reported that one of the agents she supervised, Rexford Copsy, had been following her around the premises and into the bathroom. Cilione Decl., ECF 47 at ¶ 8. At the time, both Plaintiff and Mr. Copsy were on intermittent leave. Copple Dec., Ex. A, ECF 44-1 at 52–53. Plaintiff Cilione had been tracking Mr. Copsy's breaks and lunches as part of her supervisory role. *Id.* She spoke with Mr. Copsy when she determined that he had been taking breaks beyond the permissible allowance. *Id.* Mr. Copsy, apparently in response, started "keeping tabs" on Plaintiff by following her when she would leave her desk. *Id.* Plaintiff did not believe that Mr. Copsy followed her because of a sexual interest. Copple Dec., Ex. A, ECF 44-1 at 53–54. Ms. Gueltzow spoke with Mr. Copsy on September 4, 2017 and arranged to have him transferred off of Plaintiff Cilione's team. Gueltzow Decl., ECF 43 at ¶ 4. Plaintiff had no additional contact with Mr. Copsy after his transfer. Copple Decl., Ex. A, ECF 44-1 at 51. Plaintiff left work on continuous leave on September 21, 2017. *Id.* at 40.

Plaintiff filed a claim for workers' compensation on November 22, 2017 alleging stress caused by her employment with Defendant. Gueltzow Decl., Ex. B, ECF 43-2. The claim was initially denied, but on appeal the original decision was set aside and the claim was ordered to be accepted. Copple Decl., Ex. D, ECF 44-4.

Plaintiff Cilione was scheduled to return to work on December 22, 2017. Copple Decl., Ex A, ECF 44-1 at 41. On or around December 22, 2017, Plaintiff Cilione communicated through text to Mr. Sergi that she had not yet been released to return to work. *Id.* at 42. Plaintiff never communicated any intention to return to work at any time after December 22, 2017. *Id.*; Gueltzow Decl., ECF 43 at ¶ 6. Techfive administratively terminated Plaintiff Cilione's

employment about a year later on December 19, 2018 because Plaintiff never returned to work. Gueltzow Decl., Ex. C, ECF 43-3. Plaintiff does not claim that her ultimate termination from Techfive was inappropriate. Copple Decl., Ex A, ECF 44-1 at 44–44.

Defendant filed a motion for summary judgment on all of Plaintiff's claim on November 11, 2019. In the briefing, Defendant raised evidentiary objections to portions of the declarations cited by Plaintiff. ECF 50 at 2–3. This Court considered the objections raised by Defendant but denied the request to strike the evidence from the record.

## DISCUSSION

Defendant moves for summary judgment on Plaintiff's claims for (A) discrimination based on disparate treatment; (B) discrimination based on a hostile work environment; (C) retaliation for taking medical leave; and (D) retaliation for whistleblowing. ECF 41. Defendant also moves for a partial summary judgment on Plaintiff's request for lost wages during the time covered by her claim for workers' compensation. *Id.* Each argument is addressed below.

## A. Gender Discrimination

Plaintiff's first claim for relief alleges that Defendant discriminated against Plaintiff because of her sex in violation of Or. Rev. Stat. § 659A.030. *See* ECF 4 at 4–5. Under that statute, employers are prohibited from discriminating against employees because of their sex in "compensation or in terms, conditions or privileges of employment." Or. Rev. Stat. § 659A.030(1)(b). Plaintiff appears to allege two theories of gender discrimination—disparate treatment and a hostile work environment. *See* ECF 4 at 4–5.

Because Or. Rev. Stat. § 659A.030 was modeled after Title VII of the federal Civil Rights Act of 1964, Oregon courts generally consider federal decisions interpreting Title VII to be instructive. *Harris v. Pameo Corp.*, 170 Or. App. 164, 176 (2000). When analyzing Title VII claims for employment discrimination, the Ninth Circuit has "emphasized the importance of

zealously guarding an employee's right to a full trial." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004). A plaintiff alleging a claim of employment discrimination "need produce very little evidence in order to overcome an employer's motion for summary judgment." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000). The degree of proof necessary for Title VII claims on summary judgment "does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (citation omitted).

### 1. Disparate Treatment

Federal courts apply the McDonnell Douglas "burden-shifting" procedural framework when analyzing claims of employment discrimination. *Dawson v. Entek Intern.*, 630 F.3d 928, 934–35 (9th Cir. 2011). Under this framework, the employee has the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the employee succeeds, then the burden of production—but not persuasion—shifts to the employer to establish a legitimate, nondiscriminatory reason for the alleged discriminatory action. *Id.* at 802–03. Finally, if the employer meets this burden, the employee then has the burden of persuading the court that the purported reason for the action is pretextual. *Id.* at 804–05.

To establish a prima facie claim for gender discrimination, Plaintiff must offer proof that (1) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802); *see also Dawson*, 630 F.3d at 935) (affirming grant of summary judgment on Oregon state law claim and Title VII claim analyzed together).

PAGE 9 – OPINION AND ORDER

Defendant does not dispute that Plaintiff may establish the first two elements—that she belongs to a protected class and that she performed her job satisfactorily. *See generally* ECF 41. Defendant argues, however, that Plaintiff's discrimination claim fails because she cannot show (1) that she was subject to an unlawful adverse employment action, and (2) that any of the challenged actions were based on her gender. *Id.* at 16.

### a. Adverse Employment Action

The Ninth Circuit has held that "[n]ot every employment decision amounts to an adverse employment action." *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 869 (9th Cir. 1996). For example, "mere ostracism in the workplace" is not an adverse employment action. *Id.* (citations omitted). The parties agree that an adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hess v. Multnomah Cty.*, 216 F. Supp. 2d 1140, 1154 (D. Or. 2001) (quoting *Burlington Indus., Inc. v. Ellerth*, 542 U.S. 724, 761 (1998)); *see* ECF 41 at 15; ECF 45 at 5.

Plaintiff has alleged three acts or decisions of Defendant that she argues constitute adverse employment actions: (1) denying her schedule change request, (2) assigning male employees to special projects (the CST) over her, and (3) her supervisor failing to assist her as much as her male counterparts. *See* ECF 4 at 3–4. Defendant argues that these actions are not actionable conduct for a gender discrimination claim. ECF 41 at 15. In her briefing in response to Defendant's Motion for Summary Judgment, Plaintiff does not contest Defendant's argument that neither the lack of assignment to the CST  nor the lack of assistance from her manager constitute adverse employment actions. *See* ECF 45 at 5.

First, this Court has already decided that Plaintiff is time-barred from bringing a claim that she suffered gender discrimination because she was passed over for the CST position.

*Cilione v. TechFive, LLC*, No. 3:18-CV-02030-SI, 2019 WL 1246195, at *2 (D. Or. Mar. 18, 2019). Defendant Techfive previously moved to dismiss Plaintiff Cilione's claims which relied on allegations before March 26, 2017 and were therefore outside the statute of limitations. *See* ECF 12. "Under Oregon law, a complaint based on an alleged unlawful employment practice under any statute in chapter 659A must be filed in court or with BOLI within one year of the occurrence of the unlawful employment practice." *Cilione,* 2019 WL 1246195, at *2 (citing Or. Rev. Stat. § 659A.875(1); Or. Rev. Stat. § 659A.820). In considering Defendant's  Motion to Dismiss, United States District Judge Michael H. Simon concluded that the denial of the CST position occurred more than a year before Plaintiff filed her BOLI complaint and thus fell outside the statute of limitations. *Id.*

Second, as to the lack of assistance from Plaintiff's supervisor, this Court is not persuaded that Plaintiff has met her prima facie burden. There is scant evidence in the record suggesting that Plaintiff received sub-par assistance in comparison to her male peers. Plaintiff testified at her deposition that her supervisor, Mr. Sergi, responded more quickly to her peers, answered questions, and helped the other supervisors when they had to have difficult conversations with subordinates. Copple Decl., Ex. A, ECF 44-1 at 47. But Plaintiff has provided no specific examples of this conduct. In her briefing, Plaintiff alleges that she "noticed different treatment by her supervisors and management" after she reported that agents were adding protection plans without consent, citing "Decl. of Jessica Cilione, ¶ 4, pg 1:7–10." ECF 45 at 2. In that portion of Plaintiff's declaration, however, she states that "I frequently experienced conduct by other employees and supervisors that I felt was humiliating and that it unreasonably interfered with work performance." ECF 47 at ¶ 4. Although it appears Plaintiff also cites a

deposition excerpt, Plaintiff has submitted no deposition excerpts to the court, and the cited portion does not otherwise appear in the record.

Moreover, this court is not persuaded that receiving sub-par assistance constitutes an adverse employment action. *See Hess v. Multnomah Cty.,* 216 F Supp 2d 1140, 1154–1155 (D. Or. 2001). "Harsh and demeaning" treatment of a plaintiff does not constitute an adverse employment action absent some tangible harm. *Id.* at 1155 (citing *Strother*, 79 F.3d at 869; *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 n.6 (9th Cir. 1994)). Plaintiff has not suggested that she suffered any tangible injury because she received less assistance from Mr. Sergi than her peers. And although the Ninth Circuit has held that a failure to respond to an employee's communications may qualify as an adverse employment action, *see Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089–91 (9th Cir. 2008), Plaintiff has not alleged that Mr. Sergi refused to communicate with her. She has only claimed that Mr. Sergi responded to her more slowly than her peers.

Third, as to the requested schedule change, this Court is not persuaded that this decision constitutes an adverse employment action. Plaintiff argues that she was unable to align her schedule with the agents that she supervised because Defendant denied her request for a flex schedule. ECF 45 at 5. For this reason, Plaintiff asserts that she could not adequately assist her agents, which reflects on Plaintiff's job performance. *Id.* Mr. Sergi received Plaintiff's scheduling request by email on July 6, 2017 and promptly forwarded the proposal to the scheduling coordinator, Lori Munk. Sergi Decl., ECF 42 at 2. The next day, on July 7, 2017, Plaintiff began her period of intermittent leave. Copple Decl., Ex. A, ECF 44-1 at 40. Techfive neither granted nor denied Plaintiff's schedule change request before she began intermittent leave. It is unclear from the record whether Techfive ever actually denied Plaintiff's schedule

change request, but even assuming the request was denied while Plaintiff was on leave, Plaintiff can show no causal link between the denied request and her ability to oversee her agents. Additionally, Plaintiff offered no proof that her team received lower ratings because of scheduling issues or that her team's performance led to a change of Plaintiff's employment benefits or compensation.

Furthermore, some courts have considered the denial of a schedule change insufficient to constitute an adverse employment action. *See Hargrow v. Federal Exp. Corp.*, 2006 WL 269958, *4 (D. Ariz. 2006) (denial of shift change not considered adverse employment action for disparate treatment claim); *cf. Arakaki v. Brennan*, 771 F. App'x 783, 783–84 (9th Cir. 2019) (change in shift schedule not adverse employment action for retaliation claim).

Finally, Plaintiff Cilione conceded at the hearing that the denial of the shift change was not connected to her gender. To prevail on a claim of disparate treatment based on gender, Plaintiff must offer evidence that supports an inference of discrimination. *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978).

Plaintiff bears the burden of establishing a prima facie showing that she suffered an adverse employment action and has failed to do so. Having considered Plaintiff's allegations of adverse employment action, this Court grants Defendant Techfive summary judgment on Plaintiff's claim for disparate treatment under ORS § 659A.030.

## 2. Hostile Work Environment

Plaintiff next claims that she faced a hostile work environment on the basis of her sex. To make out a hostile work environment claim, Plaintiff must show that (1) she was subjected to verbal or physical conduct based on her gender; (2) the conduct was unwelcome; and (3) the conduct was severe or pervasive enough to alter the conditions of her employment. *Pavon v. Swift Transp. Co., Inc.,* 192 F.3d 902, 908 (9th Cir. 1999); OAR 839-005-0030(1)(b).

"[H]arassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). The motivation can be a "general hostility to the presence of women in the workplace." *Id.*

"The standard for determining whether harassment on the basis of sex is sufficiently severe or pervasive to create a hostile, intimidating or offensive working environment is whether a reasonable person in the circumstances of the complaining individual would so perceive it." OAR 839-005-0030(2). Isolated incidents, or behavior that is offensive but not severe, will generally not suffice. *See Kortan v. California Youth Auth.,* 217 F.3d 1104, 1111 (9th Cir. 2000) (isolated remarks by plaintiff's supervisor, although offensive, were not "frequent, severe or abusive enough to interfere unreasonably with Kortan's employment"; summary judgment for employer affirmed). Courts are to determine whether an environment is sufficiently hostile or abusive by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

An employer may be held liable for the conduct of an employee under one of two theories: vicarious liability and negligence. *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001). If the alleged harasser was a supervisor of the employee, the employer may be held vicariously liable. *Id.* If an alleged harasser is a co-worker, a plaintiff "must prove that the employer was negligent, *i.e.* that the employer knew or should have known about the harassment and did not take adequate steps to address it." *Id.* (citing *Nichols v. Azteca Restaurant Enters.*,

256 F.3d 864, 875 (9th Cir.2001)). Under a negligence theory of liability, the plaintiff bears the burden of establishing that an employer failed to adequately respond to the harassment. *Swinton*, 270 F.3d at 804. "The reasonableness of the remedy depends on its ability to: (1) 'stop harassment by the person who engaged in harassment;' and (2) 'persuade potential harassers to refrain from unlawful conduct.'" *Nichols v. Azteca Rest. Enterprises, Inc.*, 256 F.3d 864, 875 (9th Cir. 2001) (quoting *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991).

This Court finds that Plaintiff's allegations, separately or in combination, fail to rise to the level of an actionable claim of a hostile work environment. Plaintiff Cilione claims that she faced a hostile work environment because of the following conduct: (1) her supervisor, Mr. Sergi, and a peer supervisor, Brandon Keffer, belittled and humiliated female team members; and (2) Defendant failed to adequately investigate her complaints of being followed by another employee, Rexford Copsy. ECF 4 at 4–5; Cilione Decl., ECF 47 at ¶ 8.[1]

First, Plaintiff has failed to meet her burden of establishing that the conduct of Mr. Sergi or Mr. Keffer was severe or pervasive. *Pavon,* 192 F.3d at 908. Plaintiff has provided little evidence of the frequency, indecency, or severity of the alleged yelling and humiliation from Mr. Keffer or Mr. Sergi. Indeed, she has offered no details whatsoever about Mr. Keffer's conduct. Even assuming that Plaintiff could identify harassing conduct by Mr. Keffer, Plaintiff has not presented evidence that Defendant Techfive acted negligently when responding to the alleged conduct. Although Mr. Keffer was a supervisor at Techfive, he was not Plaintiff's supervisor. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998) (stating that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile work environment

---

[1] In the Complaint, Plaintiff alleges that Defendant is liable for the actions of "Mr. Sergi and Mr. Jones," but in her briefing she cites the portion of her declaration discussing Sergi and Keffer. Compare ECF 4 at 4–5 with Cilione Decl., ECF 4 at ¶ 8.

created by a supervisor with immediate (or successively higher) authority over the employee"). Therefore, in order to hold Defendant Techfive liable for Mr. Keffer's conduct, Plaintiff must offer proof that Techfive negligently failed to take adequate remedial measures once the company knew or should have known of the alleged misconduct. *Swinton*, 270 F.3d at 804.

The record demonstrates that both Mr. Sergi and Ms. Gueltzow promptly responded to the reports of mistreatment. Mr. Sergi responded to each of Plaintiff's reports within a few days. Copple Decl., Ex. A, ECF 44-1 at 29–30. He requested that the agents reporting mistreatment, who had not yet been identified, speak with a member of management to provide specifics "so we can address this." *Id.* Ms. Gueltzow then set up a meeting with Plaintiff to further investigate the matter. Gueltzow Decl., ECF 43 at ¶ 3. Once Plaintiff identified three employees who allegedly felt mistreated, Ms. Gueltzow continued to investigate the allegations by conducting interviews with those employees. The employees reported no concerns about Mr. Keffer's conduct. *Id.* The investigation was not closed until after Ms. Gueltzow completed all of the interviews. *Id.* This Court finds that Defendant's response was reasonable and adequate under the circumstances.

As to Mr. Sergi, Plaintiff claims that he yelled at her two times during her employment at Techfive. Copple Decl., Ex. A, ECF 44-1 at 31. Plaintiff estimated that the occurrences were roughly 4 to 6 months apart. *Id.* at 31–32 (estimating the first incident between January and March 2017 and the second in July or August of 2017). When describing the first incident, Plaintiff Cilione conceded that Mr. Sergi was not screaming but speaking in a raised voice. *Id.* at 31. Nor has Plaintiff claimed that the content of Mr. Sergi's speech was vulgar. *See id.* At the hearing Plaintiff agreed that, in both instances, the content of the alleged yelling was unrelated to Plaintiff's gender. The Ninth Circuit has held that a plaintiff failed to meet his burden of

establishing severe or pervasive harassment for a hostile work environment claim when he only provided evidence of two instances in which a coworker yelled at him offensively, despite the claim that the harassment was continuous. *See Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 643 (9th Cir. 2003). As such, Plaintiff has failed to offer proof that harassment in this case was severe or pervasive as a matter of law.

Second, Plaintiff's allegations about Mr. Copsy following her fail to support a claim for a hostile work environment because Defendant took remedial action promptly after learning of the harassment. *See Garcez v. Freightliner Corp.*, 188 Or. App. 397, 410 (2003) (quoting *Faragher*, 524 U.S. at 799–800) (holding that an employer is only liable for the harassment of employees if they "'knew or should have known' of the harassment and failed to take prompt and effective remedial steps."). Plaintiff reported Mr. Copsy's conduct on August 24, 2017, and he was transferred off Plaintiff's team eleven days later on September 4, 2017. Copple Decl., Ex. A, ECF 44-1 at 49–51; Gueltzow Decl., ECF 43 at ¶ 4. There is no evidence that Defendant was aware of Mr. Copsy's conduct before Plaintiff's report. Plaintiff also agreed that she suffered no additional harassment from Mr. Copsy once he was transferred from her team. Copple Decl., Ex. A, ECF 44-1 at 51. At the hearing, Plaintiff Cilione argued that Defendant should have taken immediate action to remedy Plaintiff's complaint. This Court finds that Defendant's response was almost immediate and was reasonable under the circumstances.

Plaintiff has not established that she suffered severe or pervasive harassment. Thus, this Court grants Defendant Techfive summary judgment on Plaintiff's claim for a hostile work environment under ORS § 659A.030.

## B. Protected Leave Retaliation

To establish a claim for retaliation for taking protected leave under the OFLA, Plaintiff must show that (1) she availed herself of a protected right; (2) she was adversely affected by an

employment decision; and (3) there is a causal connection between the two actions. *Price v. Multnomah Cty.*, 132 F. Supp. 2d 1290, 1296 (D. Or. 2001); Or. Rev. Stat. § 659A.183(1). The parties agree that the *Price* test accurately states the requirements for showing a *prima facie* retaliation claim for taking protected medical leave. *See* ECF 41 at 18–19; ECF 45 at 9; Or. Rev. Stat. § 659A.183. But the parties dispute whether Plaintiff was affected by an adverse employment decision.[2]

The Ninth Circuit has an expansive definition of adverse employment actions for retaliation claims and has held that "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). In *Ray*, the Ninth Circuit listed "a wide array of disadvantageous changes in the workplace" that have been considered adverse employment actions in this circuit. *Id.* 1240. Although "mere ostracism" was insufficient, "a lateral transfer," "undeserved performance ratings," "the dissemination of an unfavorable job reference," exclusion from meetings, the denial of secretarial support, and being given a "more burdensome work schedule" all constitute adverse employment actions. *Id.* at 1241 (citations omitted). Plaintiff identifies two events to support her claim for retaliation: (1) pressure from Ms.

---

[2] In the briefing, Defendant argues that Plaintiff's retaliation claim fails because her leave of absence entitled her to workers' compensation benefits and was thus not covered by OFLA. ECF 41 at 19; *see also* OAR 839-009-0210(18) (excluding from the definition of "OFLA Leave" a leave of absence taken by an employee "who is unable to work because of a disabling compensable injury, as defined in ORS 656.005 . . ."; Or. Rev. Stat. § 656.005(7)(c) (defining a "disabling compensable injury" as "an injury which entitles the worker to compensation for disability or death"). At oral argument, Defendants retracted this argument and conceded that OFLA leave may be granted and then returned to an employee once the employee receives a decision on a workers' compensation claim. *See* OAR 839-009-0240(11); *see also Yeager v. Providence Health Sys. Oregon*, 195 Or. App. 134, 139 (2004) (recognizing BOLI rule that makes it unlawful to retaliate against an employee who is "in any way invoking the provisions of OFLA").

Gueltzow and Mr. Sergi to resign; and (2) Ms. Gueltzow sharing Plaintiff's confidential medical information.

This Court is not persuaded that the statements from Ms. Gueltzow and Mr. Sergi constitute an adverse employment action sufficient for a retaliation claim. In *Ray*, the Ninth Circuit explained that adverse employment actions do not "cover every offensive utterance by co-workers, because offensive statements by co-workers do not reasonably deter employees from engaging in protected activity." *Id.* at 1243; *cf. Hellman v. Weisberg*, 360 F. App'x 776, 779 (9th Cir. 2009) (holding that the "mere threat of termination [from a supervisor] does not constitute an adverse employment action" in a Title VII retaliation case). Based on this precedent, this Court does not find that these comments rise to the level of actionable conduct that would reasonably deter an employee from taking OFLA leave.

Second, this Court does not find that the email sent by Ms. Gueltzow to supervisors containing a list of employees on medical leave constitutes an adverse employment action. In her briefing, Plaintiff did not address the email or otherwise provide any arguments on why this conduct constitutes an adverse employment action. *See* ECF 45 at 9. Defendant, on the other hand, contends that the email contained only permissible information that served a legitimate business purpose. *See Ward v. Westland Plastics, Inc.*, 651 F.2d 1266, 1269 (9th Cir. 1980) (holding business necessity a defense to apparently discriminatory actions). Defendant claims that the report was sent to supervisors to enable them to coordinate schedules based on availability. ECF 41 at 21 (citing Gueltzow Decl. ¶ 8). Plaintiff was not singled out in the email. She was listed among all the employees taking various forms of leave. The report did not provide any information beyond the statement that Plaintiff was taking leave for "[e]mployee's own

health reasons." Copple Decl., Ex. A, ECF 44-1 at 38. This Court does not find this email

reasonably likely to deter an employee from taking medical leave.

Plaintiff has failed to establish a prima facie case for retaliation for taking medical leave.

This Court therefore grants Defendant Techfive summary judgment on Plaintiff's claim for

retaliation under Or. Rev. Stat. § 659A.183(1).

## C. Whistleblower Retaliation

Plaintiff's third claim for relief alleges that she was retaliated against for whistleblowing

in violation of Or. Rev. Stat. § 659A.199. ECF 4 at 6. Oregon Revised Statutes § 659A.199(1)

provides:

> It is an unlawful employment practice for an employer to
> discharge, demote, suspend or in any manner discriminate or
> retaliate against an employee with regard to promotion,
> compensation or other terms, conditions or privileges of
> employment for the reason that the employee has in good faith
> reported information that the employee believes is evidence of a
> violation of a state or federal law, rule or regulation.

To establish a prima facie retaliation claim for whistleblowing, Plaintiff must show that she (1)

engaged in a protected activity; (2) suffered an adverse employment decision; and (3) there was a

causal link between the protected activity and the adverse employment decision. *Ruggles v. Cal.

Polytechnic State Univ.,* 797 F.2d 782, 785 (9th Cir.1986).

In the complaint, Plaintiff alleges that she was retaliated against for reporting: (1) agents

adding property protection plans onto customers' accounts without consent; (2) Mr. Sergi and

Mr. Keffer belittling female coworkers; and (3) Mr. Copsy harassing Plaintiff at work. ECF 4 at

6. Defendant does not dispute that Plaintiff engaged in a protected activity but argues that there

is no evidence that she suffered a resulting adverse employment decision. ECF 41 at 22–24.

Plaintiff contends that she suffered an adverse employment action in retaliation for

whistleblowing when Mr. Gueltzow suggested that she quit her job and Mr. Sergi provided her

with less assistance than her peers. This Court has already determined that these actions do not constitute actionable adverse employment action. Moreover, Plaintiff has offered no evidence that there is a causal link between the alleged retaliatory acts and her whistleblowing activity. This Court therefore grants Defendant Techfive summary judgment on Plaintiff's claim for retaliation for whistleblowing in violation of Or. Rev. Stat. § 659A.199.

### D. Wrongful Constructive Discharge

In Oregon, a plaintiff may bring a claim for the common law tort of wrongful discharge, and that discharge may be constructive. *Bratcher v. Sky Chefs, Inc.*, 308 Or. 501, 503 (1989). United States District Court Judge Michael H. Simon dismissed Plaintiff's claim for wrongful discharge when considering Defendant's previous Motion to Dismiss. ECF 22. Plaintiff therefore is barred from bringing an independent claim for wrongful constructive discharge.

To the extent that Plaintiff asserts that she suffered an adverse employment action of constructive discharge, her argument is unavailing. The parties agree that Plaintiff must show the following elements to establish constructive discharge: (1) Defendant intentionally created or intentionally maintained specified working condition(s); (2) those working conditions were so intolerable that a reasonable person in Plaintiff's position would have resigned because of them; (3) Defendant desired to cause the employee to leave employment as a result of those working conditions or knew that the employee was certain, or substantially certain, to leave as a result of those working conditions; and (4) that Plaintiff did leave the employment as a result of those working conditions. *McGanty v. Staudenraus*, 321 Or. 532, 557 (1995); ECF 41 at 24; ECF 45 at 10.

Defendant contends that Plaintiff cannot establish the elements for constructive discharge because she never resigned, citing *Ryan v. Patterson Dental Supply, Inc.*, CV-98-1177-ST, 2000 U.S. Dist. LEXIS 7007, *71 (D. Or. Feb. 28, 2000), *findings and recommendation adopted in*

PAGE 21 – OPINION AND ORDER

*part*, CV-98-1177-HA, 2000 U.S. Dist. LEXIS 6999 (D. Or. May 12, 2000). "A claim of constructive discharge necessarily requires that an employee actually resign." *Id.* In *Ryan*, the district court determined that a plaintiff's claim for constructive discharge failed because she did not resign, but went on medical leave and was later terminated. *Id.* The court, relying on Oregon Supreme Court precedent, *Stupek v. Wyle Laboratories Corp.*, 327 Or. 433, 437–41 (1998), determined that a claim for constructive discharge did not accrue until the termination of the employment relationship became effective. *Id.* Thus, the analysis of whether the plaintiff was constructively discharged was at the point the employee was terminated rather than when the employee went on medical leave.

This Court finds no reason to divert from precedent in this district. Defendant offered proof that Plaintiff was administratively terminated after taking medical leave and Plaintiff does not claim that her administrative termination was inappropriate. Copple Decl., Ex A, ECF 44-1 at 44–44. Even assuming that Plaintiff resigned, Plaintiff has failed to present admissible evidence establishing the other elements of constructive discharge. *See McGanty*, 321 Or. at 557 (requiring the terms of employment be objectively intolerable to establish constructive discharge); *cf. Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (describing the high bar for constructive discharge). Accordingly, Plaintiff has failed to demonstrate that she was constructively discharged as a matter of law.

**E.  Lost Wages**

Defendant requests that this Court determine that Plaintiff is estopped from recovering lost wages because (1) Plaintiff conceded that she could not work for Techfive in any capacity because of her mental disability, and (2) Plaintiff cannot recover lost wages for the period in which she will receive time-loss compensation under her workers' compensation claim. ECF 41

at 26–27. Because this Court has granted summary judgment on each of Plaintiff's claims, the

Court need not reach this issue.

## CONCLUSION

Defendant Techfive's motion for summary judgment, ECF 41, is GRANTED. This case

is DISMISSED with prejudice.

**IT IS SO ORDERED**.

DATED this 21st day of April, 2020.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge